1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**ALEX ELI RODRIGUEZ -DIAZ,**

**Plaintiff,**

 **v.**

**RAMON L. CRUZ-COLON, et al.,**          **CIVIL NO. 10-1764(GAG)**

**Defendants.**

## OPINION AND ORDER

Plaintiff in this matter, Alex Eli Rodriguez-Diaz ("Plaintiff") brought this action against co-defendants Ramon L. Cruz-Colon ("Cruz") and Ana Maria Lopez-Erquicia ("Lopez"), in their personal and official capacities as Insurance Commissioner and Sub-Commissioner of the Commonwealth of Puerto Rico, respectively as well as against the Insurance Commission of Puerto Rico (collectively "Defendants"), seeking redress for alleged acts of discrimination and deprivation of due process.  Plaintiff's claims were brought pursuant to 42 U.S.C. Section 1983; Title VII of the Civil Rights Act, 42 U.S.C. 2000e; and the Civil Rights Act of Puerto Rico, P.R. Laws Ann. tit 1, §§ 13-19.

This matter is currently before the court on Defendants' motion to dismiss (Docket No. 10). The motion was opposed by Plaintiff (Docket No. 11).  After reviewing the submissions and pertinent law the court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss (Docket No. 10).

### I.    Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right

**Civil No. 10-1764 (GAG)**

1  to relief above the speculative level." <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct.

2  1955, 1965 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all

3  reasonable inferences in the plaintiff's favor.  <u>Parker v. Hurley</u>, 514 F.3d 87, 90 (1st Cir. 2008).

4  However, "the tenet that a court must accept as true all of the allegations contained in a complaint

5  is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

6  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

7  do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).  "[W]here the well-pleaded facts do not

8  permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

9  –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S. Ct. at 1950 (quoting

10  Fed.R.Civ.P. 8(a)(2)).

11      In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal

12  conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2)

13  plausibility analysis is a context-specific task that requires courts to use their judicial experience and

14  common sense. <u>Id.</u> at 1949-50 (citing <u>Twombly</u>, 550 U.S. at 555-56).  In applying these principles,

15  courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-

16  pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  <u>Iqbal</u>,

17  129 S. Ct. at 1950.  However the court cautions against "thinking of plausibility as a standard of

18  likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and

19  read in plaintiff's favor." <u>Sepulveda-Villarini v. Dept. of Educ. of P.R.</u>, No. 08-2283, slip op. at 10-

20  11 (1st Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 556)

21  **II.      Relevant Factual & Procedural Background**

22      Plaintiff began working for the Government of the Commonwealth of Puerto Rico in 1991.

23  From 1991 through 2009, Plaintiff was employed by a number of different government agencies.

24  During his tenure with the government Plaintiff never received a warning, oral or written, related

25  to the performance of his duties.  Beginning in 1995 and ending on June 16, 2009, Plaintiff occupied

26  the tenured position of Director of Human Resources at the Planning Board.  His title in this position

27

28                                                                   2

**Civil No. 10-1764 (GAG)**

1   was Administration Analyst VI.

2          On June 16, 2010, Plaintiff was recruited by the Office of the Commissioner of Insurance

3   ("OIC") to occupy a trust position as Director of Human Resources of said agency.  After appointing

4   Plaintiff to a trust position, Defendants learned that Plaintiff was a member of the Popular

5   Democratic Party ("PDP") and not the New Progressive Party ("NPP") –the party his employers

6   were affiliated with.

7          On August 26, 2009, Cruz, acting on behalf of Lopez, ordered Plaintiff to immediately go

8   on vacation for fifteen days.  The order was communicated to Plaintiff in a rude, energetic, hostile,

9   and violent manner.  Lopez also ordered that Plaintiff return his office keys and identification card

10  and told him that he would be escorted out of the building.  Cruz wrote a letter to Eng. Hector

11  Morales Vargas, Chairman of the Planning Board of the Commonwealth of Puerto Rico, indicating

12  that the OIC no longer required Plaintiff's services and asked that he be reinstated to his tenured

13  position as Administrative Analyst VI at the Planning Board.

14         On September 16, 2009, Plaintiff received a copy of the letter sent by Cruz to Hector Vargas.

15  Plaintiff was supposed to return to work at the OIC on September 18, 2009.  On that day, Plaintiff

16  went to the Planning Board offices and showed the letter to the Executive Director, Manual Cardona.

17  Cardona told Plaintiff that he had no knowledge of this letter and it had never been received by the

18  Planning Board.  Human Resources Director of the Planning Board, Attorney Jeffrey Perez,

19  informed Plaintiff that the agency required to reinstate him to a tenured position was the OIC, as he

20  had been transferred there on June 16, 2009.

21         On September 17, 2009, Plaintiff received a letter addressed to him signed by Cruz.  The

22  letter indicated that Plaintiff had been terminated from his employment because of various

23  infractions to the Administrative Order on Conduct, Corrective Measures and Disciplinary Actions

24  of the OIC.  The letter had not been personally delivered but had been left at his home.  Following

25  his termination, Plaintiff requested a hearing with the agency.  On November 17, 2009, the agency

26  held an informal hearing.  No one from the agency appeared during the hearing.  Additionally there

27

28                                                  3

Civil No. 10-1764 (GAG)

were no witnesses present at the hearing, and no documentary evidence was presented.  The officer in charge of the hearing ultimately affirmed the decision of the agency.  Plaintiff was notified of the decision on December 21, 2009.  The notification did not indicate the effective date of Plaintiff's termination.

On January 12, 2010, Plaintiff filed an appeal before the Appellate Commission for the Public Service's System of Human Resources Administration.  The appeal is currently pending.

**III.    Discussion**

**A.    § 1983 Claims Against the Defendants**

Plaintiff alleges violations of his First and Fourteenth Amendment rights under the U.S. Constitution, for the alleged acts of political discrimination committed by the directing officers at the OIC.  In order for a claim to be cognizable under § 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the named defendant acted under color of state law; (2) that the plaintiff was deprived of federally protected rights, privileges or immunities; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).  This causal connection may consist of direct acts by the defendant, or certain acts performed at the defendant's direction or knowledge and consent.  See Rizzo v. Goode, 423 U.S. 362, 370 (1976).

**1.    Violation of Federally Protected Right**

"[Section] 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000) (citing Albright v. Oliver, 510 U.S. 266, 271 (1994).  As such, Plaintiff's § 1983 claims are grounded in violations of his rights under the First and Fourteenth Amendments to the U.S. Constitution.  In their motion to dismiss (Docket No. 10), Defendants aver that Plaintiff's claims are not actionable under the rights protected by the First and Fourteenth Amendments, and therefore pray for the outright dismissal of these claims.

4

Civil No. 10-1764 (GAG)

### a.    Due Process Claim

The Fourteenth Amendment protects against deprivation of life, liberty, or property without the due process of law.  U.S. Const. amend. XIV.  This due process guarantee has both procedural and substantive aspects.  See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008).  The Supreme Court has consistently held that substantive due process rights are violated by executive action "when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protections of liberty and property."  Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  This right encompasses those public employees who possess a property interest in continued employment and requires notice and a hearing prior to the termination of their employment."  Febus-Cruz v. Sauri-Santiago, 652 F. Supp. 2d 140, 150-51 (D.P.R. 2009) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-44 (1985).  "Property interests subject to due process protection are delineated 'by existing rules or understandings that stem from an independent source such as state law.'" Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 52 (1st Cir. 2010) (quoting Bd. of Regents, 408 U.S. at 577).  The First Circuit has continually recognized that Puerto Rico law grants career government employees a constitutionally protected property interest in their continued employment.  See Costa-Urena v. Segarra, 590 F.3d 18, 27 (1st Cir. 2009) (citing Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).

Defendants do not contest the fact that Plaintiff was a career employee of the Puerto Rico government.  Instead Defendants contend that no due process violation occurred, as either adequate post-deprivation process was sufficient under the circumstances, or in the alternative, if pre-deprivation process was in fact required, plaintiff received sufficient process.

Defendants contend that post-deprivation process is adequate under these circumstances, pursuant to the Parratt-Hudson doctrine.  See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981).  According to this doctrine, a random or unauthorized deprivation of property by a state employee does not constitute a violation of the procedural requirements of due

**Civil No. 10-1764 (GAG)**

process, if a meaningful post-deprivation remedy is available.  See Hudson, 468 U.S. at 533. However, the court finds that this doctrine is inapplicable to this case, as the alleged actions by the named defendants were not "random" or "unauthorized" as described in the holdings of Parratt and Hudson.  "[T]he reasoning of Parratt and Hudson emphasizes the State's inability to provide pre-deprivation process because of the random and unpredictable nature of the deprivation . . . ." Zinermon v. Burch, 494 U.S. 113, 138 (1990).  Here, the alleged violations of due process were orchestrated by the Commissioner and Sub-commissioner of the OIC, both of whom are authorized by the state to take the described action – terminate Plaintiff's employment and ensure procedural safeguards. Therefore, **"**the deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights . . . by an official's abuse of his position.'" Zinermon, 494 U.S. at 138 (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)).  Such grounds do not call for the  application of the Parratt-Hudson doctrine.  See id. (finding Parratt-Hudson doctrine inapplicable when "[t]he State delegated to [the state actors] the power and authority to effect the very deprivation complained of. . . and also . . . the concomitant duty to initiate the procedural safeguards . . . ."); see also Concepcion Chaparro v. Ruiz-Hernandez, 607 F.3d 261, 267 (1st Cir. 2010); Chmielinski v. Massachusetts, 513 F.3d 309, 315 (1st Cir. 2008) (cases finding inapplicability of Parratt-Hudson doctrine to cases where actions are authorized by the state).  Accordingly, the termination of Plaintiff's career employment required both sufficient pre-deprivation and post-deprivation process.  See Zinermon ,494 U.S. at 132 ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.") (citations omitted).

To satisfy the requirements of due process, the state "need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." O'Neill v. Baker, 210 F.3d 41, 48 (1st Cir. 2000) (quoting Gilbert v. Homar, 520 U.S. 924, 929 (1997)).  With regard to an initial hearing, "[d]ue process requires only that the pre-termination hearing fulfill the purpose of 'an initial check against mistaken

**Civil No. 10-1764 (GAG)**

1   decisions-essentially, a determination of whether there are reasonable grounds to believe that the

2   charges against the employee are true and support the proposed action.'" <u>Marrero-Gutierrez v.</u>

3   <u>Molina</u>, 491 F.3d 1, 9 (1st Cir. 2007) (quoting <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 135 (1st

4   Cir. 2005)).

5        Plaintiff contends that the termination notice he received from Cruz did not satisfy the

6   requirements of due process.  Plaintiff's termination notice only contained "vague and general

7   terms" as grounds for his termination. (<u>See</u> Docket No. 1 at ¶ 12.)  Further, the notice only indicated

8   that his termination was the result of various infractions to an "Administrative Order of the Office

9   of the Insurance Commissioner." (<u>See</u> <u>id.</u>)  Plaintiff was also never faced with specific allegations,

10  nor was he permitted to see the relevant reports or investigations of the OIC related to his case. (<u>See</u>

11  <u>id.</u> at ¶ 46.)  Plaintiff further contends that the agency hearing, which took place on November 17,

12  2009, was constitutionally inadequate.  Plaintiff alleges that no one from the agency appeared to

13  testify at the hearing, and no witnesses or documentary evidence were presented to the administrative

14  officer. <u>See</u> <u>id.</u> at ¶ 16.)  Additionally, Plaintiff contends that during the hearing, the administrative

15  officer made comments demonstrating a lack of impartiality. (<u>See</u> <u>id.</u>)

16       Accepting all of Plaintiff's allegations as true, the court finds that even when considering

17  Plaintiff's opportunity for a post-deprivation remedy, the pre-termination process does not meet the

18  minimal requirements for due process.  <u>See</u> <u>Chmielinski</u>, 513 at 316 (finding that a pre-termination

19  hearing "need not be elaborate as long as an employee receives (1) oral or written notice of the

20  charges against him, (2) *an explanation of the employer's evidence*, and (3) an opportunity to present

21  his side of the story.") (internal quotations omitted) (emphasis added).  Among his averments,

22  Plaintiff alleges that he did not receive any explanation of the OIC's evidence, either in the

23  termination notice or at the pre-termination hearing.  Without such information, Plaintiff was not

24  provided with a meaningful opportunity to present his side of the story.  <u>See</u> <u>Ojeda-Rodriguez v.</u>

25  <u>Zayas</u>, 666 F. Supp. 2d 240, 254 (D.P.R. 2009) (recognizing that a failure to provide plaintiff with

26  an explanation of the evidence against her, thus impeding her from presenting story in a meaningful

27  way, constitutes sufficient grounds for due process violation.)  Therefore, Plaintiff has alleged

28

Civil No. 10-1764 (GAG)

1    sufficient grounds to demonstrate a procedural due process violation.  Accordingly, the court

2    **DENIES** Defendants motion to dismiss Plaintiff's procedural due process claim.

3

4                        **b.    Political Discrimination**

5        To state a valid political discrimination claim under § 1983, a plaintiff must demonstrate that

6    the named defendants deprived him/her of a federally protected right under the color of state law and

7    that the exercise of that right was a substantial factor in the adverse employment action.  Aguiar

8    Carrasquillo v. Agosto Alicea, 445 F.3d 19, 25 (1st Cir. 2006).  To establish a *prima facie* case of

9    political discrimination, a plaintiff must make four showings: (1) the plaintiff and the defendant

10   belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing

11   political affiliation; (3) that a challenged employment action has occurred; (4) and sufficient

12   evidence, whether direct or circumstantial, that the challenged employment action stemmed from

13   politically based animus.  Gonzlez-De-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004).  In

14   their motion to dismiss, Defendants contend that Plaintiffs have failed to allege sufficient facts to

15   satisfy the pleading requirements of a *prima facie* case of political discrimination.  Specifically,

16   Defendants aver that Plaintiffs have failed as to the second and fourth elements of their claim.

17       As to the second and fourth elements, Plaintiff alleges that following his transfer to the trust

18   position at the OIC, Defendants learned that Plaintiff was not a member of the NPP.  (See Docket

19   No. 1 at ¶ 3.)  After obtaining knowledge of Plaintiff's political affiliation, co-defendant Cruz wrote

20   a letter to Engineer Hector Morales Vargas, Chairman of the Planning Board, indicating that the OIC

21   no longer required Plaintiff's services and asking that he be reinstated to his previous career position.

22   (See Docket No. 1 at ¶ 10.)  This request was denied by the Planning Board and Defendants

23   subsequently terminated Plaintiff's employment.  The court finds these allegations sufficient to

24   demonstrate Defendants' knowledge of Plaintiff's political affiliation and its alleged impact on

25   Defendants' decision to terminate Plaintiff's employment.  Defendants' efforts to hastily remove

26   Plaintiff from his trust position and return him to his previous position at the Planning Board, only

27   to ultimately terminate his employment when it was discovered that the OIC was legally obligated

28                                          8

Civil No. 10-1764 (GAG)

to reinstate him, permit the court to "infer more than a mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950.  Plaintiff has therefore satisfied the pleading requirements of his first amendment claim.  Accordingly, the court **DENIES** Defendants' motion to dismiss Plaintiff's First Amendment claim.

## 2.        Individual Liability of Cruz and Lopez

Defendants also move to dismiss Plaintiff's Section 1983 claims against Cruz and Lopez in their personal capacities.  Personal capacity suits against governmental officials seek to impose personal liability for actions taken by the government official under color of state law.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.

With regard to the individual actions of defendants Cruz and Lopez, Plaintiff's allegations are as follows: (1) Cruz gave an order to Lopez to tell Plaintiff to go on vacation for fifteen days; (2) on that same day Lopez ordered Plaintiff to return his office keys and I.D. card, and told him that he would be escorted out of the building; (3) Cruz wrote a letter to Eng. Hector Morales Vargas, Chairman of the Planning Board, indicating that the OIC no longer required Plaintiff's services and requesting his reinstatement into his previous career position; (4) Plaintiff provided both Lopez and Cruz with letters identifying his right to reinstatement to a career position similar to the one he had previously held with the Planning Board; (5) Following Plaintiff's letter and the Planning Board's response, Cruz wrote a letter to Plaintiff indicating that Plaintiff's employment had been terminated because of various infractions to an administrative order.  (See Docket No. 1 at ¶¶ 5 -7, 10-12.)

Accepting these allegations as true, the court finds that Plaintiff has sufficiently alleged actions by defendant Cruz, which demonstrate his personal involvement in the alleged violations of Plaintiff's constitutional rights.  According to the allegations, Cruz was instrumental in terminating Plaintiff's trust position.  (See Docket No. 1 at ¶¶ 5, 7.)  He was also the one that sought Plaintiff's return to his position at the Planning Board, only to inform Plaintiff that the OIC was terminating his career employment following the Planning Board's refusal to reinstate him.  (See Docket No.

**Civil No. 10-1764 (GAG)**

1 at ¶¶ 7, 10, 11, 12.)  In contrast, Plaintiff fails to allege any  action by Lopez that would lead this court to infer liability on her behalf.  The allegations against Lopez recognize her participation in discharging Plaintiff from his trust position, however they do not describe how she was personally involved in any way in the termination of Plaintiff's career employment.  (See Docket No. 1 at ¶ 5-6.)  As it is this deprivation that Plaintiff alleges resulted in the constitutional violations, Lopez cannot be held personally liable for these claims.  Accordingly, the court **GRANTS** Defendants' motion to dismiss the claims against Lopez in her personal capacity and **DISMISSES** the same.

### a.      Qualified Immunity

In their motion to dismiss, Defendants present a perfunctory defense of qualified immunity. Defendants contend that, because Plaintiff has failed to establish a violation of a constitutional right, they are entitled to a defense of qualified immunity.  (See Docket No. 10 at 18-19.)  As previously stated, the court has found that Plaintiff has alleged sufficient facts to support his First Amendment and Due Process claims.  As Defendants have failed to elaborate on the second prong of the qualified immunity defense, the court **DENIES** Defendants' motion to dismiss the claims against defendant Cruz in his personal capacity based on qualified immunity.

### B.      Title VII Claim

In his opposition Plaintiff moved to voluntarily dismiss his Title VII claim against the Defendants.  Therefore, this claim is **DISMISSED** without prejudice.

**IV.      Conclusion**

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss.  Remaining before this court are Plaintiff's local law claims as well as his Section 1983 claims against Defendants in their official capacity and defendant Ramon L. Cruz-Colon in his personal capacity.  All other claims are **DISMISSED**.


**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of December, 2010.

10

**Civil No. 10-1764 (GAG)**

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge