IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALEX ELI RODRÍGUEZ-DÍAZ,

Plaintiff,

v.

RAMON L. CRUZ-COLÓN, et al.,

Defendants.

Civil No. 10-1764 (GAG)

**OPINION AND ORDER**

Alex Eli Rodriguez-Diaz ("Plaintiff") brought this action against the Office of the Commissioner of Insurance (the "OCI"), as well as Ramon L. Cruz-Colon ("Cruz") and Ana Maria Lopez-Erquicia ("Lopez"), in their personal and official capacities as Insurance Commissioner and Sub-Commissioner, respectively (collectively "Defendants"), seeking redress for alleged acts of discrimination and deprivation of due process. Plaintiff's claims were brought pursuant to 42 U.S.C. § 1983; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; and the Civil Rights Act of Puerto Rico, P.R. Laws Ann. tit. 1, §§ 13-19.

This matter is currently before the court on Defendants' motion for summary judgment (Docket No. 38). The motion was opposed by Plaintiff (Docket No. 48). Defendants filed a reply brief (Docket No. 65). After reviewing the submissions and pertinent law, the court **GRANTS** Defendants' motion for summary judgment (Docket No. 38).

**I.    Local Rule 56**

Local Rule 56(c) states:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

L.CV.R. 56(c). Rule 56 continues in subsection (e) to state, "Facts contained in a supporting or

**Civil No. 10-1764 (GAG)**

opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." L.Cv.R. 56(e). Together, these rules require an opposing party to admit, deny or qualify the facts of the moving party, and to explain the reasons for any such denials or qualifications with record citations. If the opposing party wishes to include any additional facts to supplement the facts of the moving party, the opposing party must include those facts in a separate section. L.Cv.R. 56(c).

The First Circuit and the judges of the District of Puerto Rico have made clear that adherence to this rule is compulsory, and failure to do so may result in the court disregarding any non-complying fact. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32-33 (1st Cir. 2010) (affirming district court's decision to disregard facts the opposing party did not properly accept, qualify or deny); Gutierrez v. Toledo, 780 F. Supp. 2d 171, 173 (D.P.R. 2011) (holding moving party's statement of facts uncontested due to opposing party's failure to comply with Local Rule 56); Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc., 802 F. Supp. 2d 324, 330 n. 2 (D.P.R. 2011) (disregarding opposing party's statement of facts that do not specifically address the facts of the moving party). When an opposing party merely submits its own statement of fact that is non-responsive to the moving party's facts by not admitting, qualifying or denying the moving party's facts, the district court is free to deem the moving party's facts admitted and may disregard the opposing party's statement altogether. Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007); Rivera-Cartagena, 802 F. Supp. 2d at 330. The rules were implemented in order to ensure the court focuses its attention on genuinely controverted material facts. See Caban Hernandez, 486 F.3d at 7. It is not the court's task to sift through non-responsive statements of fact in order to discern whether any genuine issue of material fact exists. Rather, it is the court's role to determine whether a genuine issue exists after being properly briefed by the parties. This rule, along with the anti-ferreting rule, puts the onus on the parties to prepare motions for the court that make the actual issues of the case clear and provide citations to record in order to assist the court in reaching the correct conclusion.

**Civil No. 10-1764 (GAG)**

The present case is similar to that of Caban Hernandez and Rivera-Cartagena in that Plaintiff submitted his statement of uncontested material facts without any reference to Defendants statement and without admitting, qualifying or denying any of Defendants' statements. (See Docket No. 49.) Instead, Plaintiff's statement contains 309 facts that Plaintiff uses to rebut Defendants' statements, but neither makes reference to any Defendants' facts, nor categorizes these facts as additional facts. (See id.) The court, thus, deems Defendants' facts admitted and disregards Plaintiff's facts due to Plaintiff's failure to adhere to Local Rule 56. By submitting completely non-responsive opposing statements of facts, Plaintiff asks the court to reconcile 404 statements of fact and then discern whether any genuine issue of material fact exists. That is not the proper role of the court and the court will not endeavor to do Plaintiff's work for him.[1]

**II.    Relevant Factual Background and Procedural History**

Lopez holds a career position at the OCI. She began working at the OCI in 1996. (See Docket No. 46-1 at 2.) Cruz was appointed as the commissioner of the OCI in January 2009. (See id. at 62.) In April of 2009, Cruz appointed Lopez to be a sub-commissioner. (See id. at 16-17.) The sub-commissioner is responsible for representing the OCI in the commissioner's absence and assisting in the day to day operation and administration. (See id. at 5-6.) Lopez has the additional responsibility of handling the OCI's legal affairs. (See id. at 6-7.) The commissioner is responsible for all hiring, transferring and terminating of employees at the OCI. (See id. at 8.)

Cruz appointed Eddy Sanchez ("Sanchez") to a trust position as the auxiliary commissioner of administration. (See Docket No. 46-1 at 40-41.) Cruz also implemented a new functional organizational chart for the OCI, which was in place when Lopez was appointed sub-commissioner. (See id. at 13 & 15.) This new organizational chart required the human resources department to be

---

[1] Defendants submitted a reply to Plaintiff's memorandum and statements of uncontested fact in support thereof. Defendants reply is in accordance with Local Rule 56. However, as the court has excluded Plaintiff's opposing statements of uncontested fact, the court need not analyze Defendants reply.

3

**Civil No. 10-1764 (GAG)**

directly accountable to the commissioner and sub-commissioner. (See id. at 46-2 at 1.) Previously, the human resources department was under the jurisdictino of the auxiliary commissioner for administration, the position Sanchez was appointed to. (See Docket Nos. 46-2 at 2; 46-1 at 12.) The organizational chart was submitted to the office of management and budget in order to ensure the operation of this structure would not require excessive outlays of funds. (See Docket No. 46-1 at 14.) Plaintiff is knowledgeable of the new organizational chart. (See Docket No. 39-2 at 9.)

Prior to joining the OCI, Plaintiff held a career position with the Puerto Rico planning board. (See Docket No. 46-1 at 114.) Plaintiff was recommended to be the director of human resources. (See Docket No. 46-1 at 19.) Plaintiff was interviewed by Lopez, and later by Cruz for this position. (See Docket Nos. 46-1 at 20, 67; 39-2 at 5.) At no time did Lopez and Cruz discuss Plaintiff's political affiliation. (See Docket No. 46-1 at 21 & 65.) Ultimately, Cruz offered Plaintiff the position. (See Docket No. 46-1 at 21.)

Plaintiff began working at the OCI on June 16, 2009 and Lopez was his immediate supervisor. (See Docket Nos. 46-1 at 22, 28; 46-2 at 6.) Lopez assigned Plaintiff most of his daily tasks and both Lopez and Cruz verbally informed Plaintiff of the new organizational chart, which required all matters regarding human resources to be funneled through them, as opposed to the auxiliary commissioner as stated by the previous organizational chart. (See Docket Nos. 39-2 at 8; 46-1 at 32-33, 101-02, 143.) Plaintiff understood this directive and that he should not report to Sanchez. (See Docket No. 39-2 at 12-13.) These instructions only pertained to confidential or discretionary matters. (See id. at 7.) All employee files at the OCI are kept under lock and Plaintiff was informed on June 22, 2009 that he would receive one of two keys to gain access to these files. (See Docket Nos. 46-1 at 82; 46-2 at 7.) Cruz would keep the other key. (See id.)

During his employment at the OCI, Cruz and Lopez instructed Plaintiff to preside over a pre-termination hearing for Diana Calero ("Calero"), a former employee of OCI. (See Docket Nos. 46-1 at 45; 46-2 at 20.) While Plaintiff was instructed to produce a report regarding this pre-termination hearing, Plaintiff failed to do so. (See Docket Nos. 46-1 at 45; 46-2 at 20.) While conducting

4

**Civil No. 10-1764 (GAG)**

interviews for the director of consumer services at the OCI, Plaintiff interviewed Arlene Pabon, the daughter of Plaintiff's friend. (See Docket No. 39-2 at 19.) Plaintiff never informed Lopez or Cruz of his relationship with Pabon prior to the interview. (See id. at 20.) Lopez admonished Plaintiff verbally for his failure to accomplish the requested tasks, but admits there is no written documentation of this admonishment. (See Docket No. 46-1 at 28.)

Plaintiff received an e-mail from Sanchez on August 13, 2009, requesting him to prepare a certificate of employment for Jaime Solla. (See Docket Nos. 39-2 at 15; 46-2 at 10.) Sanchez signed the certificate the next day. (See Docket No. 46-2 at 9-10.) Plaintiff did not inform Defendants about the instructions from Sanchez. (See Docket No. 46-2 at 15.)

Also on August 14, 2009, Lopez met with Plaintiff and OCI's legal counsel. (See Docket Nos. 46-1 at 48-49; 46-3 at 1.) Lopez requested Plaintiff to draft a written memorandum stating the discussion topics of the meeting. (See Docket Nos. 46-1 at 48-49; 46-3 at 1.) Plaintiff wrote the memorandum that day and Lopez delivered it to Cruz three days later. (See Docket No. 46-1 at 52.) Contained within that memorandum, Plaintiff stated that he felt pressured and intimidated by Sanchez. (See Docket No. 46-3 at 1-2.) The memorandum also states that Sanchez informed Plaintiff that Sanchez would become the new sub-commissioner once Lopez was appointed to a judgeship. (See id.) When Lopez presented the memorandum to Cruz, she suggested that Plaintiff take fifteen days paid vacation leave. (See Docket No. 46-1 at 54.) Plaintiff's last day of work was August 26, 2009. (See id. at 53.)

On August 26, 2009, Cruz wrote a letter to the president of the Puerto Rico planning board requesting that Plaintiff be reinstated to his career position with that agency. (See Docket Nos. 46-1 at 75; 46-3 at 5.) On September 17, 2009, Cruz received a letter from the president of the planning board informing Cruz that Plaintiff's career position belongs to the OCI rather than the planning board. (See Docket No. 46-3 at 13-14.) On August, 26, 2009, Lopez handed Plaintiff a letter granting him fifteen days paid vacation. (See Docket Nos. 46-1 at 53; 46-3 at 7.)

**Civil No. 10-1764 (GAG)**

Cruz met with Plaintiff to discuss the administrative hearing of Calero prior to August 5, 2009. (See Docket No. 39-2 at 27.) At this meeting, Cruz and Plaintiff did not discuss Plaintiff's political affiliation. (See Docket No. 39-3 at 10.) Cruz was never told of Plaintiff's political affiliation, nor did he ask. (See Docket No. 46-1 at 88-89, 90-91.) Cruz never told Plaintiff that the office was full of members of the Popular Democratic Party ("PDP"). (See id.) Likewise, Lopez did not know the political affiliation of the majority of staff in human resources, nor did she allow political discussions at the OCI. (See Docket Nos. 46-1 at 17-18.) Plaintiff did not acquire first-hand knowledge of the political affiliations of Calero, Jorge Escudero, or those who worked in human resources. (See Docket No. 39-2 at 23-26.)

On September 15, 2009, Cruz signed a letter, drafted by Lopez, terminating Plaintiff's employment with the OCI and informing him of his right to a hearing. (See Docket Nos. 46-1 at 29; 46-3 at 8-12.) Cruz sent a messenger to deliver the letter at Plaintiff's home, however, Plaintiff was not home at the time, but received the letter upon returning later that day. (See Docket Nos. 46-1 at 56-57; 39-2 at 36.) That letter detailed the reasons for Plaintiff's termination and included an explanation that Plaintiff could request a hearing within five days. (See Docket No. 46-3 at 8.) Plaintiff requested a hearing shortly after receiving his termination letter. (See Docket No. 39-2 at 28-29.) A hearing was scheduled for November 17, 2009. (See Docket No. 39-2 at 29.)

Lopez assigned Carlos Arroyo ("Arroyo") to be the officer in charge of Plaintiff's hearing. (See Docket No. 46-1 at 58.) Plaintiff attended the hearing on November 17, 2009, and was accompanied by an attorney. (See Docket No. 46-2 at 12.) During this hearing, Plaintiff was given the opportunity to present evidence and to rebut the allegations against him in order to allow the examiner to make the proper decision according to the law. (See id.) Plaintiff's attorney submitted several documents as evidence against Plaintiff's dismissal. (See Docket No. 46-2 at 14-15.) Plaintiff did not present any witnesses on his behalf during this hearing, but testified on his own behalf. (See Docket No. 39-2 at 34.) Ultimately, the hearing examiner recommended Plaintiff's dismissal. (See Docket No. 46-2 at 37.) Cruz informed Plaintiff that he would follow the

**Civil No. 10-1764 (GAG)**

conclusion of the hearing examiner and dismiss Plaintiff from public service, as well as his right to appeal Cruz's decision. (See Docket No. 46-3 at 15.)

Plaintiff was issued a check on December 29, 2009, representing the amount owed to him between mid-September to mid-December. (See Docket No. 46-3 at 22.) Plaintiff refused to accept this check due to a discrepancy in the amount due. (See Docket No. 39-2 at 39.) This issue was eventually resolved through a settlement agreement. (See Docket No. 46-3 at 25-26.)

Plaintiff initiated this suit against Cruz and Lopez in their personal and official capacities, as well as against the OCI for discrimination and violations of Plaintiff's due process rights. (See Docket No. 1.) Plaintiff's claims arise out of Section 1983, Title VII, and various state laws. (See id.) The court dismissed all claims except the state law claims and the Section 1983 claims against Cruz and Lopez in their official capacities and against Cruz in his personal capacity. (See Docket No. 13.) Defendants filed the present motion for summary judgment (Docket No. 38), which Plaintiff opposed (Docket No. 48), and Defendants replied (Docket No. 65).

### III.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id.

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The burden then shifts to the non-movant to establish the existence of at

**Civil No. 10-1764 (GAG)**

least one genuine and material fact in dispute. Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).

The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The non-movant "cannot rest upon mere allegation or denial of the pleadings." Fed. Deposit Ins. Corp. v. Municipality of Ponce, 904 F.2d 740, 742-43 (1st Cir. 1990) (citing FED.R.CIV.P. 56)). That is, "[t]o defeat a motion for summary judgment, evidence offered by the non-movant must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007) (citations omitted). Rather, "the nonmovant must present definite, competent evidence to rebut the motion." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citations omitted) (internal quotation marks omitted).

If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. Martinez-Rodriguez v. Guevara, 597 F.3d 413, 419 (1st Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**IV.   Section 1983**

Plaintiff brings claims under Section 1983 alleging violations of the First and Fourteenth Amendments to the United States Constitution. Section 1983 creates a remedy for those who are

**Civil No. 10-1764 (GAG)**

deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States.  See Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3, (1979)).  To succeed on a Section 1983 claim, A plaintiff must prove that someone has deprived him of a right protected by the Constitution or the laws of the United States and the perpetrator acted under color of state law.  Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

### A.     First Amendment Political Discrimination

Taking adverse actions against government officials due to their political affiliations is a violation of the First Amendment.[2]  See Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007) (citing Elrod v. Burns, 427 U.S. 347 (1976)).  A plaintiff may seek damages against defendants in their personal capacities and equitable relief defendants in their official capacities. See Martinez-Velez, 506 F.3d at 39.

A *prima facie* case of political discrimination requires evidence that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action.  See Martinez-Velez, 506 F.3d at 39; Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006). Plaintiff "must point 'to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'"  Gonzalez-de-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)).  Additionally, the plaintiff "must make a fact-specific showing that a causal connection exists between the adverse treatment and the plaintiff's political affiliation."  Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)).

---

[2]  The court notes, as the Supreme Court and the First Circuit have held, certain exceptions may apply to this general rule, but none are relevant to the present case.

**Civil No. 10-1764 (GAG)**

If the plaintiff proves his *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory ground for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs ("Mt. Healthy defense"). Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In response, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 77 (1st Cir. 2000) (internal citations omitted). In the end, "[s]ummary judgment is warranted 'only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action.'" Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

In the present case, Defendants claim Plaintiff has failed to produce evidence demonstrating prongs two and four, mainly that Defendants knew Plaintiff's political affiliation and that his political affiliation was a substantial or motivating factor in his termination. (See Docket No. 38 at 7 & 11.) Based on the admitted facts, neither Cruz, nor Lopez knew Plaintiff's political affiliation. The only evidence that could potentially raise the inference that Defendants knew Plaintiff's political affiliation is his past employment. A review of Plaintiff's past employment would show that he was employed under a PDP administration in a trust position. However, the First Circuit has ruled that political affiliation cannot be inferred from previous employment under an opposing administration. See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006). Even if Plaintiff held a trust position under a New Progressive Party administration, the analysis would not change. Trust employees are hired for a variety of reasons, most importantly for their ability to create and implement the best policy. Trust positions are not required to be given to those individuals with sympathetic political leanings. Therefore, the court finds Plaintiff has failed to provide evidence to demonstrate that Defendants knew his political affiliation with the PDP.

Even if this evidence was sufficient to demonstrate Defendants' knowledge of Plaintiff's

**Civil No. 10-1764 (GAG)**

political affiliation, Plaintiff has failed to demonstrate political discrimination was a substantial or motivating factor behind the adverse employment decision. The admitted facts show no motivation by Defendants to terminate Plaintiff's employment due to his status as a PDP member, nor does it demonstrate a general intolerance for PDP members as part of the OIC's workforce. The facts demonstrate, as expressed to Plaintiff in the September 15, 2009 letter (Docket No. 46-3 at 8-12) and the Examiner's Report (Docket No. 46-2 at 11), that political affiliation did not play a role in the termination. There is no fact or inference that Plaintiff points to that demonstrates his termination occurred because of Defendants discriminatory actions.

Therefore, having found that Plaintiff failed to establish the second and fourth prong of his *prima facie* case, the court need not analyze Defendants' Mt. Healthy defense at this time. Accordingly, the court **GRANTS** Defendants' motion for summary judgment of Plaintiff's political discrimination claim.

### B.     Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. This due process guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008). To succeed on a procedural due process claim, a plaintiff must show that he was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances. See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). Plaintiff argues that his procedural due process rights were violated because he was deprived of the enjoyment of his employment as director of human resources and later deprived of his property interest when he was dismissed from his career position by Defendants without being afforded adequate notice or a hearing. (See Docket No. 28-1 at 1.)

A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law."

**Civil No. 10-1764 (GAG)**

Hernandez-Agosto, 75 F.3d at 32 (citations omitted). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). To determine whether public employees possess such a property right, the First Circuit requires that the court examine local law and the terms and conditions of the employment arrangement. Id.

Puerto Rico law recognizes two categories of public employees: confidential or trust employees and career employees. P.R. Laws Ann. tit. 3, § 1465; see also Morales-Santiago v. Hernandez-Perez, 488 F.3d 465, 469 (1st Cir. 2007). Under Puerto Rico law, trust employees are "selected and removed at will." P.R. Laws Ann. tit. 3, §1465. "[T]he holder of a trust position does not have a constitutionally protected property interest in that position." Galloza v. Foy, 389 F.3d 26, 34 (1st Cir. 2004) (citing Ruiz-Roche v. Lausell, 848 F.2d 5, 7 (1st Cir.1988)). However, an employee with regular status in the career service who moves to a trust position, shall have the absolute right to be reinstated in a position equal or similar to the last job they held within the career service. P.R. Laws Ann. tit. 3, § 1465(a).

It is not disputed in the present case that Plaintiff's position as Director of Human Resources was a trust position. Having no property right to continued employment in his position as a trust employee, Plaintiff is not entitled to constitutional due process in the termination of his trust position.

Career employees, on the other hand, do have a property interest in their continued employment under Puerto Rico law. Garnier v. Rodriguez, 506 F.3d 22, 27 (1st Cir. 2007) (citing Gonzalez-de-Blasini, 377 F.3d at 86). Due process requires that prior to a deprivation of life, liberty, or property the individual being deprived of said interest be given notice and an opportunity for a hearing. See Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (citing Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 19 (1978)). The "root requirement" is that an individual be given an opportunity to be heard before he is deprived of any significant property interest. See

**Civil No. 10-1764 (GAG)**

Loudermill, 470 U.S. at 542 (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)).

As it is undisputed that Plaintiff has a property interest in his career position, the court addresses whether he received constitutionally adequate process in terminating his employment. "Due process requires only that the pre-termination hearing fulfill the purpose of 'an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005)). "This initial check requires the employee to receive notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence." Id. "Any standard that would require more process than this would unduly impede the government in removing poorly performing employees." Id.

In the present case, Plaintiff was informed of the decision to terminate his employment in the September 15, 2009 letter. (See Docket No. 46-3 at 8-12.) This letter also included details regarding Plaintiff's employment infractions. (See id.) This letter provided Plaintiff with notice that he was to be terminated and sufficient information for him to prepare a defense against the accusations. Additionally, this letter detailed the alleged instances of insubordination and misconduct by Plaintiff on which Defendants based Plaintiff's termination. This notice exceeds the minimum standards required by due process. See Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10-11 (1st Cir. 2003) (holding detailed allegations and findings presented to employee sufficient to meet notice requirement for procedural due process). This letter provided Plaintiff with sufficient details of misconduct and what would be presented at a hearing if Plaintiff chose to have one. Therefore, the court finds Defendants provided Plaintiff with sufficient notice of his termination.

Turning to the hearing itself, the court finds it was sufficient to provide Plaintiff with the opportunity to be heard in a meaningful manner prior to the deprivation of his position. The hearing was held on November 17, 2009, giving Plaintiff roughly two months to prepare for the hearing. Although Plaintiff did not present any witnesses, he was afforded the opportunity to do so. Plaintiff

**Civil No. 10-1764 (GAG)**

was accompanied by an attorney at this hearing and presented three letters, a prepared statement and testified on his own behalf during the hearing. (See Docket No. 46-2 at 14-15.) The hearing examiner considered all the evidence and produced a twenty-seven page report detailing his reasons for upholding Plaintiff's termination. (See id.)

Plaintiff's categorization of this hearing as informal does not change this outcome. In order to meet the minimum standards of due process, Plaintiff must be afforded the opportunity to present evidence on his behalf. See Marrero-Gutierrez, 491 F.3d at 8-9. Plaintiff was provided the allegations against him well in advance of the hearing. Plaintiff was able to refute those allegations and present evidence to support his belief that he should remain in his position. The hearing Plaintiff received was constitutionally adequate. While the hearing was conducted by an employee of the OCI, there is no evidence to suggest the hearing examiner did not weigh the evidence and make a recommendation grounded in the evidence. See Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d 9, 12 (1st Cir. 1989) (holding recommendation of hearing examiner valid when not arbitrary and capricious in nature and when no evidence demonstrates the result was pre-ordained). The First Circuit has previous held a employer or decision maker can oversee an employee's pre-termination hearing. See Feliciano-Angulao v. Rivera-Cruz, 858 F.2d 40, 44 (1st Cir. 1988). In the present case, the hearing examiner was not the initial decision maker adding legitimacy to the hearing. While the hearing may have taken place in an informal setting, there is no evidence that the hearing examiner acted in a biased fashion or arbitrarily in recommending Plaintiff's termination.

Finally, the court notes that Plaintiff was terminated before this hearing was held. However, Plaintiff was placed on paid leave for this period of time and ultimately received all compensation due for that time period. The protections for procedural due process do not attach to paid leave. See Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003) (citing Loudermill, 470 U.S. at 544-45). Therefore, the notice and the hearing meet the due process standards.

**V.    State Law Claims**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice

**Civil No. 10-1764 (GAG)**

of any supplemental state-law claims." <u>Rodriguez v. Doral Mortg. Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Id.</u>  The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. <u>Id.</u>

As all of the federal claims by Plaintiff have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims brought by Plaintiff.

### VI.  Conclusion

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment at Docket No. 38 and **DISMISSES** all claims before this court.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of July 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge